First case on the docket today is Frank v. Garnati, clause number 5-12-0321. Are you ready to proceed, Mr. Whitney? I am, Your Honor. You may do so. Good morning, Your Honors, and may it please the Court, counsel. We're here today to consider a circuit court ruling that stands for the proposition that it is acceptable under the law for a publicly elected and publicly accountable state's attorney to charge a person for kidnapping, not because he genuinely believed that she had committed such a crime, but for purely personal and vindictive reasons. So it's acceptable might be, I don't know that anything says it's acceptable for that to happen. The question is whether there's an immunity. Right. The proposition is that this can happen, and yet our judicial system can deprive the victim of any possibility to recover for the harms inflicted upon her, depriving her of any remedy whatsoever, except to maybe hope that the voters will choose not to reelect the state's attorney. And that the public policy considerations underlying the doctrine of absolute immunity in our federal civil rights jurisprudence are so compelling that we must adopt them anew in the common law of the state of Illinois in the 21st century. The case has been thoroughly briefed. At bottom, plaintiff relies primarily on this court's holding in the Abba Ferris case. Defendant relies primarily on this court's opinions in the White and Colson cases. A number of federal cases that hold that absolute immunity applies to prosecutors in Section 1983 civil rights actions. And a number of federal district court cases that, with one exception, basically repeat each other in claiming that Abba Ferris is an anomaly. It is difficult to harmonize Abba Ferris with White and Colson. Maybe impossible. But Abba Ferris is the only opinion of this court that dealt squarely with the issue of a malicious prosecution claim against a prosecutor. And in that context, it clearly differentiated between the absolute immunity that applies to federal claims and the common law doctrine of public official immunity that it said applies to state law claims of this category. Neither the White case nor the Colson case had occasion to consider the precise question raised here because neither of them involved a malicious prosecution claim. Plaintiff submits that this court should reaffirm its opinion in Abba Ferris, not only because it is still binding precedent, basically applying stare decisis, but because, for the reasons set forth in plaintiff's brief and reply brief, upholding a narrow exception to the basic rule affording prosecutors immunity for official acts best comports with the public policy of the state of Illinois. In our view, as we stated, defendant's rule, the court's rule, the circuit court's rule would create a class of elected and appointed officials who would be above the law. Defendant rightly points out with respect to official acts, but in that broad category, above the law, under all circumstances relating to their official acts. There's no pleading issue here, is there, Mr. Whitney? In other words, there's no claim by the defendant that you failed to adequately allege malicious motives. Their position simply is that it doesn't matter. Basically, I think at one point in the lower court, there was a little bit of an argument about that. And, you know, whether or not we had sufficiently bled the ultimate facts, I submit we did. But, Your Honor, that actually does raise an interesting question. That if the court is concerned about a so-called floodgate problem, which it might be, in our view, the need to be able to allege malice sufficiently in the complaint, I think, would solve that. But there are also possibilities if we look at the common law as something that is not static and that can be adapted to different changing circumstances in society. There is a possibility for the court to say, well, not only do you have to allege malice, but you have to reach a heightened pleading standard. And what occurs to me is something analogous to that is if you, I'm sure you're all familiar, that in cases involving substitution for judge for cause, the courts have held that you can't just allege that the judge is biased against. You have to prove that the bias comes from an extrajudicial source. There's a possibility here for this court to rule that not only do you have to allege malice to charge a state's attorney in a civil action like this, but you have to allege that the malice came from an extrajudicial or extralegal system source, which we would be able to do that in this case. I'm just throwing that out for the court's consideration. I believe that the malice, that the requirement of alleged malice specifically is going to be enough to solve the floodgates problem. It's not a common occurrence to charge prosecutors, but basically it's our view, for the reasons stated in our briefing, that there has to be some kind of narrow exception. In this day and age, particularly in Illinois, being ethically challenged as it is, that there needs to be some avenue by which someone who is injured by an official act by a state's attorney can at least get their foot in the courthouse door to try to be able to prove that, yes, this was not simply an exercise of prosecutorial discretion. This was malice. This was personal. This was directed at me for some personal reason, coming outside just an overzealous prosecutor. And that's really what this case at bottom is about. We submit that Abbott-Ferris had it right, that the public official immunity doctrine applies, that does set a high enough threshold, and that, granted, the larger number, volume of cases that come from the U.S. Supreme Court, the Imler case and so on and its progeny, yes, that's the system in the federal court. But here in Illinois, we're applying our own common law, and the doctrine of public official immunity sets a high enough threshold. That's really what the case is about. I don't know if the court has any other questions. Otherwise, I'll reserve the balance of my time. All right. Thank you, Mr. Bishop. Thank you, Your Honor. All right. Counsel? May it please the court. My name is Bairab Radia, and I represent the defendant, Appali, the state's attorney in this matter. I think I'd like to start by raising the one distinguishing feature of Abbott-Ferris. In this case, we did not, the state's attorney did not assert the public official discretionary immunity. The state's attorney asserted absolute immunity. So, Abbott-Ferris, as the case came to the appellate court, the second district, the defendant, Appali, in that case, had not asserted absolute prosecutorial immunity for the state law. He had asserted the public official immunity. Why that is, I don't know, Your Honor, but… You're saying he asserted under the Tort Immunity Act? Well, the public official immunity, there is under the Tort Immunity Act, yes, but also, as counsel points out, there are cases that refer to it as having been grounded in common law. But what I'd like to point out to the court is that we have two distinct immunities here. Just because Abbott-Ferris analyzed that case and then applied public official immunity does not mean that absolute prosecutorial immunity is not available to be asserted and doesn't exist. And as we pointed out in our brief, I think the best reference for that is the Imbler case, the United States Supreme Court case, which is cited very often. Now, in the Imbler case, yes, the immunity there, the absolute immunity, the issue was should absolute prosecutorial immunity apply in Section 1983 cases. That was the first time the Supreme Court took that up. However, in doing so, the Supreme Court traced the roots of absolute prosecutorial immunity in solidly in common law. In fact, Imbler court, in the decision, goes back and says the first American case to have applied absolute prosecutorial immunity was the Griffin case, an Indiana Supreme Court case, in 1896. And then it goes on to talk about other cases at the time. So defendant's position is that absolute prosecutorial immunity is well grounded in common law. I respectfully differ with the plaintiff's position, which is that, and counsel mentioned this a couple of times, and I'd like to make sure that the court gets this. This is not an immunity that federal courts are applying in federal cases. They are, but the immunity, it dates way back than Section 1983. So there is nothing to prevent the court from looking at absolute prosecutorial immunity as an immunity that can be asserted. When you say absolute immunity, your position is it doesn't matter what the facts are, or even if it's clear that the state's attorney is operating with malice, he's immune from prosecution. Yes, Your Honor. So let's just, I mean, we can always take an extreme scenario. But let's say the state's attorney calls a press conference, and he says, this man's my enemy. He's been my enemy since I was in grade school. As far as I know, he hasn't done a thing. But I'm going to charge him with murder and make him defend himself. Your position would be he's absolutely immune from making that kind of charge. Your Honor, the press conference scenario that you posited might pose a problem for the state's attorney because there are cases in which when this immunity is applied, you look at the function that he's performing. Well, he's performing a charging function, just like in this case, right? If he was to say things like that in the press conference, there is a case in which statements made in the press conference are not taken to be the prosecutorial function. So, but let me address your view. Well, let's assume, though, that a complaint is filed and the allegation is that the plaintiff was charged with a crime as a result of malicious motives or whatever. You'd say there's no exception for that? Yes, and I would point the court to the Colson decision in 1975 in which this court held. It stated that prosecutors are afforded the same immunity as judges when they're carrying out prosecutorial functions. And the court made clear that judges are given this immunity, which is absolute, even if the judge is acting maliciously or corruptly. And the court took pains to make clear that the reason for this absolute immunity is not to protect the dishonest judge or the corrupt judge, but it is for the broader public interest. And this public policy is well explained in the Imbler case. It has been, and I want to point out, the Imbler case came out one year after Colson. So this court had applied the same public policy. And, yes, the consequence of such an absolute immunity is that sometimes someone who, a person who is clearly, like Your Honor pointed out, an extreme example, is going to be wrong. But we as a society have, over the years, decided that the cost of bearing that appears to be, you know, we've got two evils, basically, and we've taken the lesson of the two evils. It's better than having the state's attorneys constantly defending lawsuits on claims of malice. Yes, and the two principles which, again, this court has addressed in Colson, I just want to point them out. One would be if we go with what Planoff is suggesting, and I'll come to that in a bit, but the narrow exception that he proposed. He says that, you know, let's have a narrow exception for something like an extreme example. Let's at least be able to have someone have the foot in the door.  It sounds reasonable, but the consequences will be that even if the state's attorney, at the end of the litigation, is able to win that lawsuit, he has now had to devote his time and energy in defending the lawsuit. We don't want state's attorneys to divert their energies and their time from what they should be doing, which is prosecute criminal cases, to defending lawsuits. So there are two costs that the public policy addresses, the cost of defending the lawsuit, diverting energy, and then the cost of personal liability at the end of it. And the personal liability part kicks in the second principle, which is they're going to be scared. Chilling effect. Chilling effect. Now, counsel, in his brief, in his reply brief, devoted a section to the burning issue of the day, which is public corruption in Illinois. And he made some good points. I would submit that if we want to fight public corruption, I don't know how to do it. I'm not qualified to talk about that. But one way we don't want to do it is to take away absolute immunity from prosecutors. What's going to happen when we have a very high-profile public corruption case and the prosecutor looks ahead, looks across and sees a battery of highly qualified lawyers defending a governor or someone? Is he going to be worrying about, should he be worrying about a malicious prosecution suit at the end of it if he's going to prosecute such a defendant? So I would submit that this public policy that we have in the common law actually is what we should keep if we want to fight public corruption, as Planoff points out. One other thing that I wanted to point out from counsel's briefs, which was that he mentions that there's a malicious motive exception to judicial immunity. And I want to make it clear that the Colson case is on point, that there is no such exception. It is absolute. In this case, as alleged, the state's attorney apparently decided to file charges, kidnapping charges, against Planoff on an allegedly unsubstantiated account of the mother of the child, Planoff's daughter. And discounted or ignored the accounts of the grandfather and other information that he allegedly knew when that seemed to suggest that there was no basis for these charges to be filed against the Planoff. That is exactly the kind of function that judges are called upon to do every day and that prosecutors are called upon to do. You have two accounts. You have to take a judgment call. So there certainly was an account that supported the charge. Yes, there was an account. And that's in paragraph 18 of the complaint where I think it's on the record. A11 of the record that was attached to the Planoff's opening brief. And the Planoff alleges, other than a completely unsubstantiated and an incredible claim by Monica Randolph that had been controverted by Gary Randolph and by Planoff, defendant had no other facts or information to support a charge of kidnapping at the time he filed the charge. So we would submit that this is the core prosecutorial function. The trial court got it right. This is exactly what the immunity protects. And there is solid basis for the absolute immunity both in Illinois law as well as in the common law and there's sound public policy. Another point I just want to make is counsel points out that a lot of the cases that we have cited in our brief, the white case, for example, only refers to federal cases. Well, there's one, the court is probably well aware, but because of the fee shifting statute, section 98.3 gives you, a lot of these civil rights claims are filed in federal courts. There aren't that many cases that we've found in Illinois. Counsel hasn't too. So you end up having cases where you have a false arrest claim. There's always a malicious prosecution claim. Supplemental jurisdiction kicks in. The judge is ruling on a motion to dismiss. I mean, he could send the supplemental claims back to the state court, but they could exercise their discretion and apply. So I think that explains the dearth of Illinois cases. Now, having said that, as I pointed out in the beginning, that doesn't mean that these federal courts are creating this immunity out of whole cloth, so to speak. They may be referring to federal decisions, but so has this court in Colson, because at the end of the day, this immunity goes back to the common law. And so just because there are references to federal cases doesn't by any means mean that this immunity is a federal quote unquote immunity applied to civil rights cases. It's always been there. The federal cases also have persuasively reasoned why in public policy this immunity is grounded. And. Unless the court has questions. Thank you, sir. Any rebuttal. Yes. Your Honor, in response to the first point raised by opposing counsel. I don't think that you can read the Alwood-Ferris opinion and conclude from the language there that the state's attorney in that case never asserted absolute immunity in response to the state law claims. The opinion indicates that public official immunity was the issue, but it didn't say that the state's attorney never tried to assert absolute immunity. And to take defendant's reading of the case, we are to believe that a state's attorney asserted absolute immunity in response to the federal complaints or charges, but just didn't think to assert it in response to the state law claims. I think that borders on a preposterous. I don't think that that occurred. And I don't think that's a fair reading of Alwood-Ferris. It was stated that, you know, the absolute immunity is well grounded in the common law. And that's clear. You read the Imbler opinion of the Supreme Court from 1976. They do trace some of that history, but they're taking a very broad sweep of how it's grounded in the common law. They're not talking specifically about Illinois. And the point that I would emphasize here is that the common law is not static. It evolves over time. The common law reflects the public policy of the times in which it evolves. And our public policy in Illinois has changed. I cite numerous examples where the state of Illinois, the official public policy of the state of Illinois, is to try to take action against this perception that there are no ethics in government. Against this perception that there's widespread corruption in government. And so if we take the broader view of the official public policy of the state of Illinois, it's our position that common law needs to adapt to reflect that. Now, we also heard about, well, the possible chilling effects and the other side of the public policy question, which I concede has not gone away. There has to be a balancing here. But when counsel talks about, well, we don't want state's attorneys to spend all their time defending lawsuits, alleging malicious prosecution and so on, well, let's have a realistic view of that. It's not as if state's attorneys are going to be defending these cases pro se. They're going to have counsel. There are avenues for delaying and taking time in the case so that it doesn't interfere with the day-to-day duties of the state's attorney. I once had a lawsuit against a state's attorney some years ago on an employment discrimination case, which is apples and oranges. Completely different from what we're talking about here. But the case didn't go to trial until the state's attorney was out of office. It took several years. There are mechanisms available so that it would not interfere with the state's attorney's day-to-day duties. As far as the Colson case is concerned, as pointed out in the reply brief, the court in that case was dealing with a completely ridiculous claim about somebody who was upset about being jailed, apparently. And there was certainly no issue raised about malicious prosecution by the state's attorney. So it didn't have the opportunity to consider that question. It was getting rid of what certainly bordered on a frivolous case. And it did not devote a lot of time to considering the questions here. Finally, with respect to paragraph 18 of our complaint, I would simply urge the court to look at the next succeeding paragraphs. We allege in paragraph 21 of the complaint that the charge was filed out of malice arising from and in retaliation for prior conflicts with plaintiff and or out of personal favoritism toward Monica Randolph and her own antagonism toward plaintiff. In other words, yes, there was a complaint from somebody, but it was a ridiculous complaint. We allege there was not probable cause. The case was an Ali Cross, and we do allege specifically that he did this in the first instance for purely personal reasons. So we do meet that threshold. Thank you, Your Honor. All right. Gentlemen, thank you both for your briefs and your arguments. It's an interesting issue. We'll take this matter under advisement and render a decision in due course. Thank you.